IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
CHARLOTTESVILLE DIVISION

|  |  |
|---|---|
| STEPHEN J. CANTERBURY,<br><br>            *Plaintiff*,<br><br>          v.<br><br>J.P. MORGAN ACQUISITION<br>CORPORATION, ET AL.,<br>            *Defendants*. | CIVIL ACTION NO. 3:11-CV-00059<br><br><u>MEMORANDUM OPINION</u><br><br>NORMAN K. MOON<br>UNITED STATES DISTRICT JUDGE |

The instant "action seeking enforcement of rescission of a refinance mortgage credit transaction pursuant to the federal Truth-in-Lending Act" ("TILA") was filed here on September 19, 2011.  On May 31, 2012, all proceedings in this matter were stayed pending the conclusion of bankruptcy proceedings against the defendants.  In January of this year, defendant J. P. Morgan Mortgage Acquisition Corporation ("J. P. Morgan," or "Morgan," or "Defendant") filed a motion for relief from stay in the United States Bankruptcy Court for the Southern District of New York. In February, the Bankruptcy Court granted the motion, allowing Plaintiff's claims against Morgan to proceed, but continuing the stay with respect to the claims against defendant GMAC Mortgage Corporation LLC ("GMAC").  On April 2, 2013, United States Magistrate Judge B. Waugh Crigler granted Morgan's unopposed motion to lift stay and bifurcate claims in this court, and the matter is now before me upon consideration of Morgan's motion to dismiss it as a defendant in this case pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.

The parties have fully briefed the motion and their arguments have been heard.  For the

reasons discussed below, I will grant Morgan's motion.[1]

## I.

### A.

Plaintiff and his wife, Adrienne Canterbury, own and reside in a home located at 2447 Springer Run Road in Gordonsville, Virginia (the "Property").  On August 31, 2007, Plaintiff entered into a refinance credit transaction with GMAC.  The credit transaction was evidence by a note (the "Note") in the principal amount of $1,027,446, and was secured by a deed of trust (the "Deed of Trust") on the Property.  The Deed of Trust was signed by both of the Canterburys.

---

[1] As discussed at greater length elsewhere in this memorandum opinion, this is the third time claims brought by this Plaintiff against this Defendant have come before this court.

*Canterbury v. J. P. Morgan Mortgage Acquisition Corporation et al*, Civil Action No. 3:10-cv-00048, a TILA complaint naming Morgan and GMAC as defendants, was filed here on August 30, 2010, and was voluntarily dismissed by Plaintiff on March 7, 2011.  (I further note that it appears that Plaintiff failed to serve the complaint within 120 days after the filing of the complaint, as required by Rule 4(m) of the Federal Rules of Civil Procedure).

*Canterbury v. J.P. Morgan Mortgage Acquisition Corporation*, Civil Action No. 3:10-cv-00054, named only Morgan as a defendant.  That complaint was originally filed in the Circuit Court for Albemarle County on April 13, 2010, but a summons was not requested or issued until August 30, 2010, when the circuit court granted leave to amend the complaint.  The amended complaint requested a declaratory judgment that Morgan was not entitled to conduct a foreclosure sale of Plaintiff's home.  Plaintiff asserted that, on February 13, 2009, when Morgan appointed a substitute trustee pursuant to the deed of trust, "J. P. Morgan was not the holder of the note and therefore did not have authority to appoint a substitute trustee on the deed of trust." The matter was removed here on October 18, 2010.  On December 20, 2010, I granted Morgan's motion to dismiss, but allowed Plaintiff 21 days to file a second amended complaint.  Plaintiff failed to amend. Subsequently, Morgan filed a motion to dismiss with prejudice, which was fully briefed and heard.  On March 30, 2011, I granted Morgan's motion to dismiss with prejudice.  As discussed elsewhere in this opinion, the difference between the previous case against Morgan and the instant case is telling: in the earlier case, Plaintiff sought to enforce certain provisions of the Deed of Trust, while in this case, he seeks to rescind it. In other words, Plaintiff's legal theory has flipped, but the two suits are based on the same transactions or occurrences.

Additionally, related claims have been raised in Plaintiff's bankruptcy action and in a case filed on August 18, 2011, by Plaintiff's wife in the Circuit Court for Albemarle County.  That matter was non-suited on December 1, 2011.

Morgan's motion introduces judicial records, which Plaintiff does not dispute.  At the hearing on the instant motion, the parties agreed that the motion need not be converted to a motion seeking summary judgment.

The crux of the complaint is Plaintiff's allegation that, at the closing table, the Canterburys were shown copies of the notice of their right to cancel, and that they signed a copy of the notice that stated that they had received their own copies of the notice, but that they were not, in fact, given a copy of the notice of the right to cancel to take with them from the closing table.

Plaintiff admits, however, in his opposition to Defendant's first motion to dismiss,[2] that he later received a copy of the notice in the mail.  He does not specify when he received it, but he does, in fact, admit having received a copy of the notice in the mail.

Plaintiff claims that,

[b]ecause GMAC did not cause copies of the notice of right to cancel to be delivered to either of the Canterburys to take with them from the closing table and because Canterbury did not receive any copy of the notice of right to cancel to take with him from the closing table, and because his wife did not have any copy of the notice of right to cancel to take with her from the closing table, and because neither of them had the notice of right to cancel to inspect and review after they left the closing table and for the next three business days, GMAC materially violated its disclosure requirements according to TILA with the result that Canterbury has retained an extended right to cancel for three years from August 31, 2007, or until his ownership interest in the home was transferred.

Plaintiff now claims that, because of this alleged TILA violation, he can now, many years later, avoid foreclosure by rescinding his refinance credit transaction – after having gone through bankruptcy (without asserting any such claim or right in the bankruptcy proceeding) and after having fully litigated (and lost) a prior lawsuit seeking to prevent Morgan, the Note holder, from foreclosing on the Property.  And, although Plaintiff admits that he does not have the necessary funds to repay the loan proceeds, Plaintiff asks the court to equitably alter the timing of TILA's tender requirement to allow Plaintiff time to sell his house in the purported hope that he can raise enough funds for the

---

[2] Before the case was stayed, Defendant filed a motion to dismiss (docket no. 9).  The order staying the case (docket no. 36) terminated all pending motions without prejudice to any party's right to file appropriate motions upon lifting the stay.

tender.[3]

In support of this request, Plaintiff states in one paragraph of his complaint that the Property has an assessed value of $1.6 million; in the subsequent paragraph, Plaintiff states that the home has an assessed value of $2.5 million. However, neither figure is close to the low figure Plaintiff cited in his 2009 bankruptcy petition.

On March 11, 2009, eighteen months after the Canterburys refinanced their house, Plaintiff filed a voluntary petition for bankruptcy under Chapter 7 of the Bankruptcy Code. *See In re Canterbury*, Case No. 09-60752 (W.D. Va. Bankruptcy March 11, 2009) (voluntary petition attached as Exhibit A to Defendant's memorandum in support of the instant motion, docket no. 52). In the petition, Plaintiff stated that the Property at 2447 Springer Run Road was subject to a claim secured by a first Deed of Trust that was serviced by EMC Mortgage Corporation (which was the loan servicer for Morgan). Although Schedule D instructed Plaintiff to identify debts as contingent or disputed, Plaintiff did not identify the Deed of Trust or the underlying debt as contingent or disputed.

Plaintiff stated that the amount of the debt was $1,027,445.99, claiming that the value of the Property was only $788,800.00, and that, therefore, $238,645.99 of the debt was unsecured. Additionally, Plaintiff owed $249,562.33 on a second mortgage on the Property; therefore, according to Plaintiff's bankruptcy petition, he owed a combined $488,208.32 more in debt than the Property was worth.

On his Schedule B, Plaintiff was required to list all of his personal property, including "other

---

[3] Meanwhile, Plaintiff has not paid the mortgage on the Property in years, nor has he paid any rent to live there, and yet on the morning of the hearing of the instant motion, Plaintiff's counsel informed me, on the record in open court, that Plaintiff was closing on another house that afternoon.

contingent and unliquidated claims of every nature, including tax refunds, counterclaims of the debtor, and rights to setoff claims." Plaintiff did not list any claims against GMAC or J.P. Morgan. Nor did Plaintiff's bankruptcy petition mention any violation of the Truth in Lending Act or reference his alleged right to rescind the Note or Deed of Trust.

During Plaintiff's bankruptcy proceeding, J.P. Morgan c/o EMC Mortgage Corporation filed a Motion for Relief from Stay in order to proceed with foreclosure of Plaintiff's Property. Morgan averred that Plaintiff had been in default since August 1, 2008, and then owed over $1,089,511.32 under the Note and Deed of Trust. Plaintiff did not respond, and the Bankruptcy Court granted the Motion for Relief from Stay on April 17, 2009.

On April 14, 2009, the Chapter 7 Trustee issued a report which stated that $0.00 of the bankruptcy estate's assets were abandoned to Plaintiff. Plaintiff's bankruptcy was discharged on June 15, 2009.

*B.*

As previously noted, on April 13, 2010, Plaintiff filed a complaint against Morgan in the Circuit Court for Albemarle County. *See Canterbury v. J.P. Morgan Mortgage Acquisition Corp.*, Case CL10-283 (Cir. Ct. Albemarle County) ("*Canterbury I*"). Plaintiff alleged that he had entered into a mortgage loan with GMAC, which was evidenced by a Note and secured by a Deed of Trust on the Property at 2447 Springer Run Road in Gordonsville. Plaintiff's lawsuit sought to enforce a provision of the Deed of Trust requiring certain notice to be given prior to foreclosure, and it further challenged Morgan's ability to foreclose pursuant to the Deed of Trust, despite the fact that Plaintiff admitted that he was in default.

On August 30, 2010, Plaintiff filed another complaint against GMAC and J.P. Morgan to prevent foreclosure based on alleged violations of TILA. *See Canterbury v. J.P. Morgan Mortgage*

*Acquisition Corp. et al*, Civil Action No. 3:10-cv-00048 (W.D. Va.) ("*Canterbury II*"). After failing

to serve the complaint, Plaintiff filed a notice of voluntary dismissal on March 7, 2011.

On October 18, 2010, *Canterbury I* was removed to this court. *See Canterbury v. J.P. Morgan*

*Mortgage Acquisition Corporation*, Civil Action No. 3:10-cv-00054 (W.D. Va.). On March 30,

2011, I granted Defendants' Motion to Dismiss *Canterbury I* with prejudice, and thereafter I entered

a final judgment dismissing Plaintiff's claims with prejudice. In granting the Motion to Dismiss

with prejudice, I observed that I had offered Plaintiff an opportunity to amend his complaint to state

a viable theory of relief to avoid foreclosure, but that Plaintiff had failed to do so. I explained that

> [t]his litigation dates back from at least March 24, 2009, when J.P. Morgan filed a
> motion to lift stay in bankruptcy court to allow it to proceed against the Gordonsville
> property. Over two years later, Plaintiff has offered no plausible facts which support
> the claim that J.P. Morgan is not entitled to foreclose, or that Plaintiff is otherwise
> entitled to any relief.

Accordingly, Plaintiff's action against Morgan was dismissed with prejudice. Plaintiff did

not appeal this final judgment.

On August 18, 2011, Adrienne L. Canterbury, Plaintiff's wife, filed another complaint in the

Circuit Court for Albemarle County against J.P. Morgan regarding the Property and Defendant's

ability to foreclose. *See Canterbury v. J.P. Morgan Acquisition Corporation*, Case

No. CL11000554-00 (Va. Cir. Ct. Albemarle County) ("*Canterbury III*"). Defendant filed a

Demurrer and Plea in Bar seeking the dismissal of *Canterbury III* based on res judicata. Thereafter,

Mrs. Canterbury filed a motion for non-suit, which was granted on December 1, 2011.

*C.*

On September 19, 2011, Plaintiff filed in this court the instant action against GMAC and

Morgan, alleging that GMAC violated TILA by not causing copies of the notice of right to cancel

to be delivered to Plaintiff at the closing table in 2007 and therefore seeking rescission of Plaintiff's

2007 refinancing credit transaction.  As previously noted, Defendants filed motions to dismiss, but before those motions to dismiss were heard, the case was stayed, on May 31, 2012, pending the conclusion of GMAC's bankruptcy, and I denied Defendants' motions to dismiss without prejudice to their right to file new motions to dismiss when the stay had been lifted.

On April 2, 2013, I granted Morgan's Motion to Lift Stay and Birfurcate Claims, and the instant motion followed.

## II.

Under Rule 12(b)(6), a cause of action may be dismissed for "failure to state a claim upon which relief may be granted."  The court must accept as true any factual allegations contained in the complaint, though it need not accept legal conclusions; to survive a motion to dismiss, a complaint must provide sufficient facts that, if accepted as true, "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corporation v. Twombly*, 550 U.S. 544, 570 (2007)).  Facial "plausibility" lies on a spectrum between possibility and probability, and it is established when the court is able to draw a reasonable inference that the defendant may be liable for the conduct alleged. *Id*.  The complaint need not include detailed factual allegations, but the factual allegations must be more than a formulaic recitation of the elements of a cause of action and must raise a plausible right to relief above the speculative level. *Id*.

A court can consider documents that are integral to and relied on in the complaint without converting the motion to one for summary judgment. *Johnson v. Portfolio Recovery Associates, LLC*, 682 F. Supp. 2d 560, 568 (E.D. Va. 2009); *see also Secretary of State For Defence v. Trimble Navigation Ltd.*, 484 F.3d 700, 705 (4th Cir. 2007) (a court may consider documents attached to the complaint as well as those attached to the motion to dismiss, so long as they are integral to the

complaint and authentic) (citation omitted).  When a plaintiff fails to introduce a pertinent document

as part of his complaint, the defendant may attach the document to a motion to dismiss, and a court

may consider the same without converting the motion to one for summary judgment.  *Id*.

Furthermore, "a court may consider official public records, documents central to plaintiff's claim,

and documents sufficiently referred to in the complaint so long as the authenticity of these

documents is not disputed."  *Witthohn v. Fed. Ins. Co.*, 164 Fed. App'x 395, 396 (4th Cir. 2006)

(unpublished); *see also Gasner v. County of Dinwiddie*, 162 F.R.D. 280, 282 (E.D. Va. 1995)

(permitting district court to take judicial notice of public documents, such as court records, even

when the documents were neither referenced by nor integral to plaintiff's complaint).

At the hearing regarding this motion, I confirmed with the parties that the judicial records

introduced by Morgan in support of its motion are undisputed and that there is no reason the instant

motion should be converted to one for summary judgment.


### III.

#### *A*.

Given the final judgment in *Canterbury I*, Plaintiff's instant lawsuit is barred by the doctrine

of res judicata.  Indeed, and as previously noted, the only difference between this case and

*Canterbury I* is that, in *Canterbury I* Plaintiff sought to enforce certain provisions of the Deed of

Trust, and in the instant case he seeks to rescind it.  In other words, Plaintiff's legal theory has

flipped, but the two suits are based on the same transactions or occurrences.

Under the doctrine of res judicata, or claim preclusion, "[a] final judgment on the merits of

an action precludes the parties or their privies from relitigating issues that were or *could have been*

*raised* in that action."  *Federated Dep't Stores, Inc. v. Moitie*, 452 U.S. 394, 398 (1981) (emphasis

added); *Brown v. Felsen*, 442 U.S. 127, 131 (1979). By precluding parties in a subsequent proceeding from raising claims that were or could have been raised in a prior proceeding, "[r]es judicata . . . encourages reliance on judicial decisions, bars vexatious litigation, and frees the courts to resolve other disputes." *Brown*, 442 U.S. at 131.

The following elements must be present for res judicata to apply: (1) a final judgment on the merits in a prior suit; (2) an identity of the cause of action in both the earlier and the later suit; and (3) an identity of parties or their privies in the two suits. *Nash County Bd. of Educ. v. Biltmore Co.*, 640 F.2d 484, 486 (4th Cir. 1981). Here, the first element of res judicata clearly has been met, because *Canterbury I* was dismissed with prejudice and therefore constitutes a final judgment, and the third element has likewise been clearly met, because J.P. Morgan and Plaintiff were the parties in *Canterbury I*.

The second element has also been met because, although Plaintiff did not assert a claim for rescission or TILA violation in *Canterbury I*, Plaintiff could have done so, and Plaintiff's current lawsuit arises out of the same transaction or series of transactions as the claims in *Canterbury I*. The United States Court of Appeals for the Fourth Circuit has adopted the transactional approach to determining whether there is an identity of claims. "[T]he appropriate inquiry is whether the new claim arises out of the same transaction or series of transactions as the claim resolved by the prior judgment." *Keith v. Aldridge*, 900 F.2d 736, 740 (4th Cir. 1990) (quoting *Harnett v. Billman*, 800 F.2d 1308, 1313 (4th Cir. 1986)). "Res judicata precludes the litigation by the plaintiff in a subsequent action of claims 'with respect to all or any part of the transaction, or series of transactions, out of which the [first] action arose.'" *Harnett*, 800 F.2d at 1314 (quoting Restatement (Second) Judgments § 24(1) (1982)). As the Fourth Circuit explained in *Harnett*,

[t]o decide this, we measure the scope of "transaction or series of transactions" by

> considering pragmatic factors such as common origin and relation, as well as whether
> the acts giving rise to the claim would be considered as part of the same unit by the
> parties in their business capacities. *See* Restatement (Second) Judgments § 24(2).
> Claims may arise out of the same transaction or series of transactions even if they
> involve different harms or different theories or measurements of relief. *Id*. comment
> c.

800 F.2d at 1314.

Res judicata applies even though the claims asserted in the first suit are different than the

claims asserted in the second suit, so long as they arise out of the same transaction or series of

transactions. As explained by the Fourth Circuit:

> Were we to focus on the claims asserted in each suit, we would allow parties to
> frustrate the goals of res judicata through artful pleading and claim splitting given that
> "[a] single cause of action can manifest itself into an outpouring of different claims,
> based variously on federal statutes, state statutes, and the common law."

*Pueschel v. U.S.*, 369 F.3d 345, 355 (4th Cir. 2004) (quoting *Kale v. Combined Ins. Co. of Am.*, 924

F.2d 1161, 1166 (1st Cir. 1991)).

Application of these principles demonstrates that Plaintiff's present lawsuit is barred by res

judicata because it is based on the same transactions or series of transactions as in *Canterbury I*.

Both cases involve the same 2007 refinancing credit transaction, the same Note, the same Deed of

Trust, and the same Property at 2447 Springer Run Road in Gordonsville. And, significantly, both

cases were brought for the same purpose of preventing (or delaying) J.P. Morgan's foreclosure of

the Property.

As I have already observed, the primary difference between this case and *Canterbury I* is that,

in *Canterbury I*, Plaintiff sought to enforce certain provisions in the Deed of Trust, and in the

present lawsuit, Plaintiff seeks to rescind the Deed of Trust. The flip-flop in Plaintiff's legal theory

simply underscores the obviousness that the two lawsuits are based on the same transaction or series

of transactions. The Canterburys may (or may not) have had strategic reasons for splitting their

claims into multiple lawsuits, but litigation creates the risk that a final judgment in one case could constitute res judicata in another action. *See Federated Dep't Stores*, 452 U.S. at 398 ("[a] final judgment on the merits of an action precludes the parties or their privies from relitigating issues that were or *could have been raised* in that action" (emphasis added)); *Brown v. Felsen*, 442 U.S. at 131 (res judicata bars previously available claims "*regardless of whether they were asserted* or determined in the prior proceeding" (emphasis added)); *Aliff v. Joy Mfg. Co.*, 914 F.2d 39, 43 (4th Cir. 1990) ("[a] prior judgment on the merits binds the parties 'not only as to every matter which was offered and received to sustain or defeat the claim or demand, but [also] as to any other admissible matter *which might have been offered* for that purpose" (emphasis added)).

*B.*

Plaintiff points out that he filed a separate lawsuit, *Canterbury II*, in this court on August 30, 2010, against Morgan and GMAC, challenging foreclosure on the Property based on an alleged rescission under TILA. *Canterbury II* was filed after *Canterbury I* was initiated in state court but before *Canterbury I* was removed to this court on October 18, 2010. On October 20, 2010, Defendant filed a motion in *Canterbury I* to have *Canterbury II* consolidated with *Canterbury I*, but by memorandum opinion and order of December 20, 2010, I declined to consolidate them because the TILA complaint, *Canterbury II*, included a defendant, GMAC, who was not a party to *Canterbury I*. I specifically observed that "Federal Rule of Civil Procedure 42(a) permits the court to consolidate two actions if they 'involve a common question of law or fact'" and that the two "cases involve common questions of fact," but that I saw "no compelling reason for formal consolidation" and that, "[a]lthough I [denied] Defendant's motion," I would "work with the parties to try" the two cases "simultaneously." (As I have already observed, Plaintiff failed to serve the complaint in *Canterbury II*, and the case was dismissed pursuant to a notice of voluntary dismissal

filed by Plaintiff on March 7, 2011.)

Plaintiff does not dispute that, on March 30, 2011, I dismissed *Canterbury I* with prejudice. Plaintiff does not dispute that *Canterbury I* involved the same 2007 credit refinancing transaction, deed of trust, note, and property that are at issue in the instant complaint. Plaintiff does not dispute that, at the time I entered final judgment in *Canterbury I*, his TILA claim had already accrued. Rather, Plaintiff argues that, because I declined to consolidate the two cases and Plaintiff subsequently dismissed his TILA claim, the TILA claim is exempt from res judicata. But the standard of a court's discretion regarding the consolidation of two separately filed cases is not the standard for determining res judicata. And, when I declined to consolidate the cases, I specifically observed that they involved common questions of fact and that they were similar enough to warrant trying simultaneously. That observation underscores that the instant TILA claim is part of the same transaction or series of transaction that were presented in *Canterbury I*. *See*, *e.g.*, *Pittson Co. v. U.S.*, 199 F.3d 694, 704 (4th Cir. 1999) (for the purpose of determining claim preclusion, "[a]mong the factors to be considered in deciding whether the facts of the current and prior claims 'are so woven together' that they constitute a single claim 'are their relatedness in time, space, origin, or *motivation*, and whether, taken together, *they form a convenient unit for trial purposes*'" (emphasis added; citations omitted)).

This is not the first case where a delinquent borrower has attempted to use multiple causes of action to delay foreclosure. But where there has been a final judgment in one of multiple actions brought by a borrower, courts have applied res judicata to bar parallel and subsequent litigation. *See*, *e.g.*, *Blick v. Long Beach Mortg. Loan Trust 2005-WL3*, Civil Action No. 3:13-cv-00002, 2013 WL 1319369 (W.D. Va. March 29, 2013) (dismissing subsequent lawsuit brought by borrower challenging foreclosure based on the same and additional claims as espoused in the original lawsuit);

*Rose v. JP Morgan Chase Bank, N.A.*, 835 F. Supp. 2d 1014 (D. Or. 2011) (debtor's prior adversary claim against bank involved same claim or claims as raised in wrongful foreclosure action, and thus res judicata doctrine applied to bar the subsequent action, even though the legal theories were different).   That Plaintiff voluntarily dismissed his TILA complaint prior to final judgment in Canterbury I does not exempt the TILA claim from preclusion.   Res judicata bars all claims arising out of the same transaction whether or not those claims were in fact brought or asserted in the earlier lawsuit.   *See Martin-Bangura v. Va. Dept. of Mental Health*, 640 F. Supp. 2d 729, 738 (E.D. Va. 2009) (res judicata bars not only claims that were in fact brought in the earlier suit, but also those that could have been litigated);   *Smith v. Ware*, 244 Va. 374, 376 (1992) (noting that res judicata applies to causes of action "which could have been litigated between the same parties and their privies").   Plaintiff's instant complaint is barred by res judicata, regardless of whether a TILA complaint was filed in 2010.   The voluntary dismissal of the complaint does not preserve or withhold it from the doctrine of res judicata; indeed, one of the underlying rationales for the doctrine is to prevent this type of *ad infinitum* claim splitting and piecemeal litigation.[4]

---

[4] I note that, "[w]hen a defendant seeks to dismiss a suit based on res judicata (*i.e.*, claim preclusion) and the original suit was decided by a federal court exercising diversity jurisdiction, the court deciding the preclusion issue must apply the law of the state in which the first federal court sits." *Blick v. Long Beach Mortg. Loan Trust 2005-WL3*, Civil Action No. 3:13-cv-00002, 2013 WL 1319369 at *2 (W.D. Va. March 29, 2013) (citing *Semtek Int'l Inc. v. Lockheed Martin Corp.*, 531 U.S. 497, 508 (2001); *Q Intern. Courier Inc. v. Smoak*, 441 F.3d 214, 218 (4th Cir. 2006)).  Under the doctrine of res judicata as it has developed in Virginia, a final judgment does not merely bar the re-litigation of the same claims that were raised and decided in the first action; rather, it also bars every claim that "arises out of the same transaction or series of transactions as the claim resolved by the prior judgment." *Keith v. Aldridge*, 900 F.2d 736, 740 (4th Cir. 1990); *see also* Rule 1:6 of the Rules of the Supreme Court of Virginia; *Ghayyada v. Rectors and Visitors of University of Virginia*, Civil Action No. 3:11-cv-00037, 2011 WL 4024799 at *4 (September 12, 2011) (explaining that Rule 1:6 "operates to bar any claim that could have been brought in conjunction with a prior claim, where the claim sought to be barred arose out of the same conduct, transaction or occurrence as the previously litigated claim."); *Vuyyuru v. Jadhav*, Civil Action No. 3:10BCVB173, 2011 WL 1483725 at *5 (E.D. Va. April 19, 2011) ("Federal courts construing Rule 1.6(a) have applied the [doctrine of res judicata] broadly to encompass the entire factual situation underlying the plaintiff's first action.").  "While Virginia law
(continued...)

In summary, I have already dismissed Plaintiff's action against J.P. Morgan involving the same transaction or series of transactions; therefore, Plaintiff's present action against J.P. Morgan is barred by the doctrine of res judicata and must be dismissed.

## IV.

### A.

Even if res judicata did not bar this case, it would be barred by Plaintiff's 2009 bankruptcy, because the bankruptcy trustee is the only person who has standing to assert the right of rescission. Notwithstanding his failure to schedule the claim as an asset in his bankruptcy case, Plaintiff now asserts standing on the basis that the claim "did not come into existence until he sent a notice of TILA rescission" and that an "extended right of rescission is not property" but is a "personal right," which Plaintiff did not invoke during his bankruptcy case.

However, under federal bankruptcy law, the bankruptcy estate comprises, with exceptions not

---

[4](...continued)
previously required the party seeking to show claim preclusion demonstrate that the later claim required the same evidence and sought the same remedy as the earlier claim, '[b]y promulgating Rule 1:6, the Supreme Court of Virginia has discarded the same-evidence and same-remedy requirements, adopting instead a same 'conduct, transaction, or occurrence' test.'" *Blick*, 2013 WL 1319369, at *2. In colloquial terms, Virginia courts have described the transactional test in Rule 1:6 as the "could-have-litigated-should-have-litigated" rule, which is broader than the previous, more narrow "same evidence test." *Va. Imports, Ltd. v. Kirin Brewery of Am., LLC*, 50 Va. App. 395, 410, n. 6 (2007). Virginia courts also recognize that all causes of action related to a single contract, deed, or transaction should be brought in the same action, and if a plaintiff instead decides to split the claims into parallel actions, then a judgment in one action bars recovery in the other related actions. *See Flora, Flora, & Montague v. Saunders*, 235 Va. 306, 310 (1988) ("A claim arising from an indivisible contract cannot be split and made the subject of separate contracts."); *Hancock v. White Hall Tobacco Warehouse Co.*, 102 Va. 239, 242–243 (1904) ("A demand arising from an entire contract cannot be divided and made the subject of several suits; and if several suits are brought for a breach of such a contract, a judgment upon the merits in either will bar a recovery in the others."); see also *Winchester Neurological Consultants v. Landrio*, 74 Va. Cir. 480, at *6 (Winchester 2008) (relying on the "one contract one transaction rule" and the "could-have-been-should-have-been" rule to hold that a final judgment relating to a particular contract barred any later action based on the same contract which had accrued by the time of the first judgment).

applicable here, "all legal or equitable interests of the debtor in property as of the commencement of the case." 11 U.S.C. § 541(a)(1); s*ee also* 11 U.S.C. §§ 301 – 303. This definition "has been construed 'broadly to encompass all kinds of property, including intangibles.'" *Logan v. JKV Real Estate Servs.*, 414 F.3d 507, 512 (4th Cir. 2005) (quoting *Integrated Solutions, Inc. v. Service Support Specialties, Inc.*, 124 F.3d 487, 490 (3d Cir. 1997)). "More specifically, 'property of the estate' under § 541(a) has 'uniformly been interpreted to include causes of action.'" *Id.* (quoting *Polis v. Getaways, Inc.*, 217 F.3d 899, 901 (7th Cir. 2000)); *see also Richman v. Garza*, 117 F.3d 1414 (Table), 1997 WL 360644 (4th Cir. Jul. 1, 1997) (observing that "[a] legal cause of action is an interest of the debtor in property within the meaning of section 541"). Causes of action that belong to the debtor's bankruptcy estate may only be pursued by the trustee, as representative of the bankruptcy estate. *Nat'l American Ins. Co. v. Ruppert Landscaping Co.*, 187 F.3d 439, 441 (4th Cir. 1999).

Line 21 of Plaintiff's bankruptcy Schedule B required Plaintiff to list all of his personal property, including "other contingent and unliquidated claims of every nature, including tax refunds, counterclaims of the debtor, and rights to setoff claims." But Plaintiff indicated "None." He did not list any claims against GMAC or J.P. Morgan, nor did he identify any violation of the Truth in Lending Act or make reference to any alleged right to rescind the Note or Deed of Trust. Instead of fully disclosing the claims and rights he now asserts, Plaintiff's bankruptcy petition instead affirmatively stated that he was bankrupt, in part, because he owed the full amount of his mortgage ($1.3 million, at the time), while the property itself was only worth $788,800. Now, it appears that Plaintiff's representation to the Bankruptcy Court that his home was only worth $788,800 was incorrect, as Plaintiff now alleges that the property has an assessed valuation of $2.5 million, which is more than three times the value Plaintiff claimed in his bankruptcy petition.

-15-

It is settled law that. unless and until a cause of action, contingent or matured, is properly scheduled, and subsequently abandoned, the claim remains property of the bankruptcy estate, even if the case has been closed, and the debtor lacks standing to pursue the claim.[5]

### B.

Moreover, Plaintiff now claims that, because of his TILA claim, he does not owe the full amount under his mortgage, which is contrary to the representations in his bankruptcy schedules.

---

[5] A motion to dismiss for lack of standing attacks the district court's subject matter jurisdiction. *See Allen v. Wright*, 468 U.S. 737, 750 (1984) (federal courts are under an independent obligation to examine their own jurisdiction, and standing "is perhaps the most important of [the jurisdictional] doctrines"). Whether a court retains subject matter jurisdiction over an action is an issue that can be raised at any time. *United States v. Beasley*, 495 F.3d 142, 147 (4th Cir. 2007). As with a motion to dismiss pursuant to Rule 12(b)(6), a court considering a motion to dismiss pursuant to Rule 12(b)(1) must accept as true all material factual allegations in the complaint and must construe the complaint in favor of the plaintiff. *Warth v. Seldin*, 422 U.S. 490, 501 (1975); *see also Falwell v. City of Lynchburg, Virginia*, 198 F. Supp. 2d 765, 772 n. 6 (W.D. Va. 2002). However, when considering a challenge to the factual basis for subject matter jurisdiction, "the burden of proving subject matter jurisdiction is on the plaintiff." *Richmond, Fredericksburg & Potomac R.R. v. United States*, 945 F.2d 765, 768 (4th Cir. 1991). A court "may consider evidence outside the pleadings without converting the proceeding into one for summary judgment," but "[t]he moving party should prevail only if the material jurisdictional facts are not in dispute and the moving party is entitled to prevail as a matter of law." *Id*. (citation omitted). At the time of filing the bankruptcy petition, the debtor surrenders the right to control the estate, including existing or potential legal claims, to the bankruptcy trustee. *See* 11 U.S.C. §§ 323(a), 701; *Richman v. Garza*, 117 F.3d 1414 (Table), 1997 WL 360644 at *1 (4th Cir. Jul. 1, 1997). Thus, "[c]auses of action that belong to the debtor's bankruptcy estate may only be pursued by the trustee, as representative of the bankruptcy estate." *A.T. Massey Coal Co., Inc. v. Jenkins*, Civil Action Nos. 7:08-cv-5632009, 7:09-cv-3, WL 1437829, at *3 (W.D. Va. May 22, 2009) (citing *Nat'l Am. Ins. Co. v. Ruppert Landscaping Co.*, 187 F.3d 439, 441 (4th Cir. 1999)). Significantly, the bankruptcy trustee's authority also extends over causes of actions, such as Plaintiff's claims here, that were never disclosed to the bankruptcy court in the debtor-plaintiff's bankruptcy filing. *See, e.g.*, *Sain v. HSBC Mortg. Servs., Inc.*, Civil Action No. 4:08-cv-2856, 2009 WL 2858993, at *5 (D.S.C. Aug. 28, 2009) ("a cause of action becomes a part of the estate whether or not it is disclosed by the debtor"); *Hutchins v. Internal Revenue Serv.*, 67 F.3d 40, 43 (3d Cir. 1995) ("since the bankrupt estate retains unscheduled assets, only the bankruptcy trustee has the authority to control them").

District courts within the Fourth Circuit have dismissed a plaintiff's claims for lack of subject matter jurisdiction where the debtor-plaintiff failed to disclose the existence of such claims in his or her Chapter 7 bankruptcy filing. *See, e.g.*, *Sain*, 2009 WL 2858993, at *5 (dismissing for lack of subject matter jurisdiction because plaintiff did not have standing to bring suit when he was in Chapter 7 bankruptcy and observing that any claims plaintiff had belonged to the trustee); *In re Family Dollar FLSA Litigation*, Civil Action No. 3:08-cv-19332, 2009 WL 1750908, at *5 (W.D. N.C. June 19, 2009) (finding that plaintiff lacked standing to pursue claims because they were the property of the bankruptcy estate, and only the bankruptcy trustee has standing to pursue such claims).

Plaintiff is judicially estopped from asserting a TILA claim for rescission given the misrepresentations and omissions in his bankruptcy petition.

Regardless of excuses, there are consequences for a bankruptcy debtor's misrepresentations of facts and failure to disclose rights and remedies that he may have had which would have impacted the chapter 7 trustee's ability to liquidate assets to pay Plaintiff's creditors.  As a result of his misrepresentations and omissions, Plaintiff emerged from bankruptcy as the owner of property that is allegedly worth three times more than he disclosed in his bankruptcy filings.  Moreover, Plaintiff now claims that his mortgage is subject to rescission, *i.e.*, that he owes even less than he represented in his bankruptcy petition.  Plaintiff, however, failed to disclose this alleged right of rescission during his bankruptcy, and he failed to disclose it later, despite a continuing duty to do so.  Under both the doctrine regarding standing, discussed above, and the doctrine of judicial estoppel, Plaintiff's claim is barred because he did not disclose a contingent TILA claim in his schedules.

Plaintiff argues that he should not be estopped from pursing his claim because he is a "lay person" and not a lawyer or accountant; "[h]owever, a debtor's lack of awareness as to her disclosure duties in a bankruptcy action is not relevant to the question of judicial estoppel." *Vanderheyden v. Peninsula Airport Commission*, Civil Action No. 4:12cv00046, 2013 WL 30065, at *12 (E.D. Va. Jan. 2, 2013) (citing *Jethroe v. Omnova Solutions, Inc.*, 412 F.3d 598, 601 (5th Cir. 2005); *In re Coastal Plains, Inc.*, 179 F.3d 197, 212 (5th Cir. 1999); *Harrah v. DSW, Inc.*, 852 F. Supp. 2d 900, 906–07 (N.D. Ohio 2012) ("It does not appear that any court has accepted ignorance of the law as an excuse for a party's failure to comply with the requirement of full disclosure.")).  A debtor bears a continuing duty to amend his or her bankruptcy schedules to disclose newly discovered claims and assets, Plaintiff has never amended his schedules to disclose to his creditors and the chapter 7 trustee the existence of his alleged claim, and Plaintiff has provided unbelievably

disparate variations in the purported valuations of his property (wild variations in the market notwithstanding). *See Burnes v. Pemco Aeroplex, Inc.*, 291 F.3d 1282, 1286 (11th Cir. 2002) ("[K]eeping in mind that judicial estoppel is an equitable doctrine invoked at a court's discretion, it is clear that the record in this case contains sufficient evidence from which to infer intentional manipulation by [plaintiff]".).

Bankruptcy does not entitle Plaintiff to a windfall. "The basic principle of bankruptcy is to obtain discharge from one's creditor's in return for all one's assets, except those exempt, as a result of which creditors release their own claims and the bankrupt can start fresh." *Payless Wholesale Distributors, Inc. v. Alberto Culver (P.R.) Inc.*, 989 F.2d 570, 571. (1st Cir. 1993) (adding that "a better plan" of "conceal[ing] your claims; get[ting] rid of your creditors on the cheap, and start[ing] over with a bundle of rights. . . . is palpable fraud that the court will not tolerate, even passively"). The Plaintiff in this case, "having obtained judicial relief on the representation that no claims existed, cannot now resurrect them and obtain relief on the opposite basis." *Id.* Plaintiff was able to retain his house in bankruptcy because of his representation that the house was worth far less than what he owed on his mortgage. Plaintiff has also failed to disclose to the bankruptcy court his alleged right of rescission which – if valid – would have dramatically changed Plaintiff's financial position. In part because his bankruptcy petition was bolstered by these misrepresentations and omissions, his debts were discharged and he was able to retain all of the equity in his property – plus even more, considering that he now claims that his mortgage debt should be rescinded.

The purpose of the doctrine of judicial estoppel is to "preserve the integrity of courts by preventing a party from abusing the judicial process through cynical gamesmanship." *Browning v. Levy*, 283 F.3d 761, 776 (6th Cir. 2002). The doctrine is especially important in bankruptcy proceedings because full and honest disclosure is "crucial to the effective functioning of the federal

bankruptcy system." *Burnes*, 291 F.3d at 1286.  In Plaintiff's case, the chapter 7 trustee filed a "no asset report" that permitted Plaintiff to retain all of his assets, including his valuable residence, while discharging almost two million dollars in general unsecured debt.  Thus Plaintiff's bankruptcy illustrates the impact the failure to disclose an asset can have on the integrity of the bankruptcy system.  Were Plaintiff's instant TILA rescission claim not barred on other grounds, judicial estoppel would not only be appropriate, but essential to maintain the integrity and viability of the bankruptcy system.

## V.

### A.

Even disregarding the procedural bars or defects in the instant case, Plaintiff's alleged right of rescission expired prior to his assertion of such right because Plaintiff admits that he was mailed a copy of the notice of rescission, and therefore received "material disclosure" pursuant to the regulation.  Plaintiff's rescission claim is dependent on the application of the extended three-year rescission period in 12 C.F.R. § 226.23(a)(3),[6] which states:

> The consumer may exercise the right to rescind until midnight of the third business day following consummation, *delivery of the notice* required by paragraph (b) of this section, *or delivery of all material disclosures*, *whichever occurs last*.  If the *required notice or material disclosures* are *not delivered*, the right to rescind shall expire 3 years after consummation, upon transfer of all of the consumer's interest in the property, or upon sale of the property, whichever occurs first.

(Emphasis added.)

Significantly, the extended three-year rescission period applies only if "the required notice

---

[6] Defendant has not raised any questions whether 15 U.S.C. § 1635(e) and 12 C.F.R. § 226.23(f) are applicable to the credit transactions and the claimed right of rescission at issue in this case.

or material disclosures are *not* delivered." *Id.* (emphasis added).  When the required notices are delivered after the consummation of the transaction, then the rescission period ends on the third business day following the delivery of the required notices.  *Id.*

Here, Plaintiff alleges that he received the notice of rescission at the closing table, and signed a copy of the notice, but did not have a copy to take with him from the closing table.  However, Plaintiff's memoranda opposing Defendants' motions to dismiss include admissions that *he received a copy of the notice of his right of rescission* in the mail after closing.[7]  *See* docket no. 18 at 1; docket no. 55 at 8.  Therefore, under the plain language of 12 C.F.R. § 226.23(a)(3), Plaintiff's right of rescission expired prior to August 30, 2010, the date that he first attempted to exercise his alleged right to rescind.  Accordingly, Plaintiff's claim seeking rescission is untimely.

*B.*

Even if rescission were an available remedy, Plaintiff would have to be able to tender the loan proceeds in order to obtain rescission. Admitting that he cannot presently tender the loan proceeds necessary to accomplish rescission, Plaintiff requests an equitable adjustment of the timing of tender.  However, TILA does not require a lender to allow a homeowner to live indefinitely in a house mortgage-free while the homeowner attempts to sell the house to raise funds to tender the amount necessary for rescission.[8]

---

[7] At the hearing on the instant motion, I asked when Plaintiff had received the notice, and Plaintiff's counsel acknowledged that "[i]t had to have been at least a day or so after[]" closing.  In short, Plaintiff received the notice and all material disclosures; thus, because the notice and disclosures were admittedly "delivered," Plaintiff is not entitled to an extended right to rescind as provided for in 12 C.F.R. § 226.23(a)(3).

[8] I reject Plaintiff's allegation that the Property is now worth more than three times what he previously swore under oath that it was worth in his 2009 bankruptcy proceeding. Regardless of what the property is worth today, Plaintiff has not alleged that he can presently tender the amount necessary to rescind absent a lengthy delay while he attempts to sell the property for what he currently thinks it is worth.  As I have previously noted, Plaintiff has not paid the mortgage on the Property in years, nor has he paid any rent to live there, and

(continued...)

*C.*

Given that the equities strongly weigh against Plaintiff, the complaint fails to plausibly state a claim for the equitable remedy of rescission. Plaintiff alleges a purely technical violation of TILA that, assuming *arguendo* that there was even a technical violation of TILA, resulted in no damages or harm to Plaintiff. Plaintiff received actual notice of the right to rescind and signed the notice; he alleges only that he did not receive his own paper copy of such notice until three or more days after the consummation of the transaction. Plaintiff has not been harmed.

Plaintiff declared bankruptcy and emerged from bankruptcy having nearly two million dollars in debt discharged, yet at no point during or after his bankruptcy did Plaintiff disclose to the bankruptcy trustee a TILA rescission claim, as required by the bankruptcy code. Thereafter, Plaintiff filed successive meritless lawsuits to delay and hinder the lawful foreclosure of his property. All of Plaintiff's prior lawsuits have been dismissed, one of which I dismissed with prejudice. Now, at this late date, Plaintiff claims to have rescinded his mortgage, and further seeks an equitable adjustment of the timing of tender while he allegedly tries to find the money necessary to tender the rescission.

Yet Plaintiff offers no valid reason why I should exercise such discretion and award Plaintiff a windfall, especially considering that the equities in this case weigh heavily against Plaintiff. Instead, citing *Mars v. Spartanburg Chrysler Plymouth, Inc.*, 713 F.2d 65, 67 (4th Cir. 1973), Plaintiff argues that creditors should be strictly liable under TILA. To be sure, *Mars* held that the provisions of TILA must be "absolutely complied with and strictly enforced." *Id*. But the Fourth

---

[8](...continued)
yet his counsel informed me that Plaintiff was closing on another house on the day of the hearing on the instant motion.

Circuit has noted that this statement in *Mars* "was not to imply, however, that the Act's requirements should not be reasonably construed and equitably applied." *American Mortgage Network, Inc. v. Shelton*, 486 F.3d 815, 819 n. 4 (4th Cir. 2007); *see also Larrabee v. Bank of America, N.A.*, 714 F. Supp. 2d 562, 566 (E.D. Va. 2010) (quoting *Shelton*). Indeed, in 1995, Congress amended "TILA to provide higher tolerance levels for what it viewed as honest mistakes in carrying out disclosure obligations." *McKenna v. First Horizon Home Loan Corp.*, 475 F.3d 418, 424 (1st Cir. 2007) (citing Truth in Lending Act Amendments of 1995, Pub. L. No. 104-29, § 3, 109 Stat. 271, 272–73). "In taking this step, Congress made manifest that although it had designed the TILA to protect consumers, it had not intended that lenders would be made to face overwhelming liability for relatively minor violations." *Id*.[9]; *see also Smith v. Highland Bank*, 108 F.3d 1325, 1327 n. 4 (11th Cir. 1997) (noting that "Congress would not have us adopt a hypertechnical reading of any part of TILA"). Moreover, Plaintiff's reliance on the "strict enforcement" language in *Mars* is misplaced, given that *Mars* only involved statutory damages, and the plaintiff in *Mars* – unlike the Plaintiff here or the counter-claimants in *Shelton* – was not seeking the equitable remedy of rescission.

When a plaintiff seeks rescission under TILA, courts in the Fourth Circuit take into consideration such factors as the technical nature of the violation, damages (or lack thereof), prior

---

[9] *McKenna v. First Horizon Home Loan Corp.*, 475 F.3d 418, 424 (1st Cir. 2007) further observed that the amendments were prompted, at least in part, by the "threat" of rescission:

> A key proponent of the legislation expressed an awareness, acknowledged by others during the floor debate, that the "threat of wholesale rescissions present[s] a real danger to our modern system of home financing." 141 Cong. Rec. S14566, 14567 (statement of Sen. D'Amato). The amendments, Senator D'Amato stated, were specifically "intended to curtail the devastating liability that threaten [s] our housing finance system." *Id*. The senator attributed that prospect—"devastating liability"—to the onslaught of suits demanding "the most draconian remedy available under Truth in Lending—rescission." *Id*. Viewed against this backdrop, it becomes readily evident that providing higher tolerance levels for minor violations was "critical to avert[ing] what could [have] be[en] a financial disaster in the mortgage industry." *Id*. at 14568 (statement of Sen. Mack).

misstatements by the plaintiff, and other equitable factors in deciding whether a plaintiff has stated a claim.  *See*, *e.g.*, *Shelton*, 486 F.3d at 819-21; *Larrabee*, 714 F. Supp. 2d at 566; *Yarney v. Wells Fargo Bank, N.A.*, Civil Action No. 3:09-cv-00050, 2010 WL 3075460 (W.D. Va. August 5, 2010) ("The failure to allege that the disclosure violation caused her harm, or that she did not receive actual notice of the right to rescind, weighs heavily against Plaintiff as the Court considers whether the equitable remedy of rescission is appropriate.").

In this case, it is clear that Plaintiff is not entitled to the equitable remedy of recession.

## D.

I repeat that, when I dismissed *Canterbury I* with prejudice *over two years ago*, I observed that

> [t]his litigation dates back from at least March 24, 2009, when J.P. Morgan filed a motion to lift stay in bankruptcy court to allow it to proceed against the Gordonsville property.  *Over two years later*, Plaintiff has offered no plausible facts which support the claim that J.P. Morgan is not entitled to foreclose, or that Plaintiff is otherwise entitled to any relief.

*Canterbury I* (Mar. 30, 2011) (emphasis added).  Yet in more than four years nothing has changed. Plaintiff still offers no plausible facts or valid legal argument to support his claim.

## VI.

For the stated reasons, the motion to dismiss filed by J.P. Morgan Acquisition Corporation will be granted.  An appropriate order accompanies this memorandum opinion.

**ENTERED** this ___29th___ day of July, 2013.

NORMAN K. MOON
UNITED STATES DISTRICT JUDGE